STATE OF NEBRASKA, APPELLEE, V. BRENT A. BOWERS, APPELLANT.

548 N.W.2d 725

Filed May 31, 1996. No. S-94-1243.

152

Dennis R. Keefe, Lancaster County Public Defender, and Kristi J. Egger for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

LANPHIER, J.

Following a bench trial in the county court for Lancaster County, Brent A. Bowers was convicted of driving under the influence (DUI), in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1992), and of failure to appear, in violation of Neb. Rev. Stat. § 29-908 (Reissue 1995). Bowers appealed to the district court and asserted that the county court erred in denying his motion to suppress evidence which was secured following the stop of his vehicle, because the basis for the stop was unconstitutional. Bowers also asserted that the county court erred in failing to suppress statements made by him while in custody and prior to his being informed of his right to remain silent. The statements Bowers sought to suppress

were his verbal responses to routine field sobriety testing. The district court affirmed the judgment of the county court. Bowers appealed to the Nebraska Court of Appeals, which affirmed the county court's orders denying Bowers' motions to suppress and the DUI conviction and sentence. *State v. Bowers*, 95 NCA No. 50, case No. A-94-1243 (not designated for permanent publication). The Court of Appeals set aside Bowers' conviction and fine for failure to appear, a matter that is not before us in this review. We granted Bowers' petition for further review of his DUI conviction and sentence. We affirm the lower court holdings that the investigatory stop of Bowers' was constitutionally proper and that the statements Bowers sought to suppress were not elicited during a custodial interrogation for purposes of the *Miranda* rule.

## BACKGROUND

On March 18, 1993, at approximately 1:45 a.m., Nebraska State Patrol Trooper Jeffrey Ward observed a 1989 Chevy Camaro with no license plates and no in-transit tags. Ward did not observe any driving errors such as speeding or swerving. Ward testified that he stopped the vehicle solely because it did not have license plates or in-transit tags.

When Ward approached the vehicle, he noticed the smell of alcohol. Bowers was unable to produce a driver's license. Bowers' license had just been reinstated, but he had not yet taken the driver's license test. However, Bowers did have the proper paperwork for the car, showing that he had purchased the vehicle from a private individual within the past 2 weeks.

Ward was unable to ascertain whether the smell of alcohol emanated from Bowers or from Bowers' passenger. Ward asked Bowers to accompany him back to his police cruiser in order to verify his story regarding his driver's license and in order to determine if the alcohol smell emanated from Bowers. As Bowers sat in the front passenger seat of the cruiser, Ward smelled alcohol and noticed that Bowers' eyes were bloodshot and that his speech was slurred.

Ward had Bowers perform some routine field sobriety tests. First, Ward asked Bowers to perform the horizontal nystagmus test. The record does not indicate whether Bowers performed

this test satisfactorily. Ward then asked Bowers to recite the alphabet. Ward testified that Bowers skipped the letter "B." Bowers was then asked to count backward and failed to do so correctly. Because it was snowing and windy, Ward did not ask Bowers to perform any other field sobriety tests such as walking heel-to-toe.

Bowers performed and failed a preliminary breath test. Ward placed Bowers under arrest and transported him to a Lancaster County correctional facility. A subsequent Intoxilyzer test showed Bowers to have .14 grams of alcohol per 210 liters of breath.

On April 13, 1993, Bowers filed a motion to suppress all physical evidence, statements, visual and auditory observations, and any other evidence seized from the defendant after the stop of his vehicle. Bowers asserted that Ward had no probable cause or articulable suspicion to justify the stop of his vehicle and that such investigatory stop violated his 4th and 14th Amendment rights under the U.S. Constitution, and as guaranteed by the Nebraska Constitution. The evidence sought to be suppressed resulted from the stop.

After several continuances and failures to appear, a hearing was conducted on the motion to suppress on September 29, 1993. At the hearing, Bowers argued that under the holding of this court in *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993), *cert. denied* 508 U.S. 940, 113 S. Ct. 2415, 124 L. Ed. 2d 638, a constitutional investigatory stop cannot be based solely on a police officer's desire to verify compliance with motor vehicle registration statutes. Therefore, Bowers argued Ward lacked a reasonable suspicion, supported by articulable facts, that criminal activity existed in order to justify the stop of Bowers' vehicle simply because his vehicle did not display either license plates or in-transit tags.

On January 21, 1994, the county court denied Bowers' motion to suppress. On March 9, Bowers filed a second motion to suppress.

In his second motion to suppress, Bowers requested that any statements made by him after being taken into custody be suppressed as fruit of the poisonous tree. Bowers asserted that he was taken into custody after he was stopped by Ward and

placed in the police cruiser. Bowers stated that since he had not yet been read the *Miranda* warnings, any statements obtained from him after he was placed in custody were obtained in violation of his rights guaranteed by the 4th, 5th, 6th, or 14th Amendment to the U.S. Constitution and guaranteed by the Nebraska Constitution. Specifically, the statements that Bowers sought to suppress were his verbal responses to the routine field sobriety tests. On March 28, 1994, the county court overruled Bowers' motion to suppress his statements.

After a bench trial, the county court found Bowers guilty of second-offense DUI and sentenced him to 45 days in jail, imposed a $500 fine, and suspended his driver's license for 1 year. Bowers was found guilty of failure to appear and was fined $75.

Bowers appealed to the district court, which affirmed the judgment of the county court.

Bowers then appealed to the Court of Appeals, which affirmed Bowers' conviction and sentence for DUI, but reversed his conviction and sentence for failure to appear. We granted Bowers' petition for further review of his DUI conviction and sentence.

## ASSIGNMENTS OF ERROR

Bowers asserts that the Court of Appeals erred in finding that it is constitutionally proper for a law enforcement officer to stop a vehicle solely because the vehicle does not have visible license plates or in-transit tags. Second, Bowers asserts that the Court of Appeals erred in finding that verbal field sobriety tests are not testimonial in nature and do not require *Miranda* warnings.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld unless its findings of fact are clearly erroneous. In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Osborn, ante* p. 57, 547 N.W.2d 139 (1996); *State v. Veiman,*

249 Neb. 875, 546 N.W.2d 785 (1996); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996); *State v. Sinsel*, 249 Neb. 369, 543 N.W.2d 457 (1996); *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996).

## ANALYSIS

### INVESTIGATORY STOP

Ward testified that he pulled Bowers over on March 18, 1993, solely because Bowers' 1989 Chevy Camaro displayed no license plates and no in-transit tags. Bowers argues that Ward did not have a reasonable or articulable suspicion that Bowers had been, or was about to become, involved in any criminal activity; therefore, the stop was not constitutionally proper. Before we address Bowers' argument, we will summarize the statutory provisions currently in effect governing the registration of motor vehicles and the display of license plates and in-transit tags.

"No motor vehicle . . . unless otherwise expressly provided, shall be operated or parked on the highways of this state unless such vehicle is registered in accordance with Chapter 60, article 3." Neb. Rev. Stat. § 60-302 (Reissue 1993). The Department of Motor Vehicles furnishes two license plates to every person whose motor vehicle is registered. Neb. Rev. Stat. § 60-311 (Reissue 1993). "Except as otherwise specifically provided, no person shall operate, drive, or park . . . a motor vehicle on the public highways unless such vehicle at all times has displayed one number plate on the back thereof and one number plate on the front thereof." Neb. Rev. Stat. § 60-323 (Reissue 1993). A violation of the motor vehicle registration statutes is a Class III misdemeanor, unless otherwise provided. Neb. Rev. Stat. § 60-348 (Reissue 1993).

A statutory exemption from the mandate that license plates must be displayed to lawfully operate a motor vehicle is provided to purchasers of new or used vehicles. Currently, one has 30 days to register a newly purchased vehicle, Neb. Rev.

Stat. § 60-320 (Reissue 1993), although previously one had only 15 days, § 60-320 (Reissue 1988).

Purchasers of new or used vehicles from licensed dealers are provided in-transit decals or tags by the dealer to display in lieu of license plates. § 60-320(3)(b) (Reissue 1993). "Such transit decal shall allow such owner to operate the motor vehicle . . . for a period of thirty days in order to effect proper registration of the new or used motor vehicle . . . ." *Id.* However, § 60-320(3)(b) also provides that on demand of proper authorities, the operator must produce the proper documentation, such as a duly executed bill of sale, a certificate of title, or other satisfactory evidence of the right of possession.

Dealer issued in-transit tags must conform to the form and numbering system prescribed by the Department of Motor Vehicles. In-transit tags contain the words "In Transit" and the date upon which the 30-day grace period expires. Dealers are required to keep a record of each set of in-transit tags issued. § 60-320(3)(b).

There is no statute providing for the issuance of in-transit tags to purchasers of vehicles from sellers other than licensed dealers. When one purchases a vehicle from a nonlicensed dealer,

> [s]uch purchaser may operate such motor vehicle without registration for a period not to exceed thirty days. Upon demand of proper authorities, there shall be presented by the person in charge of such vehicle, for examination, a certificate showing the date of transfer and the certificate of title to such vehicle with assignment thereof duly executed.

Neb. Rev. Stat. § 60-320.01 (Reissue 1993). Bowers purchased his automobile from a private individual and was able to produce the necessary documents.

Pursuant to § 60-320.01, one can lawfully operate an unregistered motor vehicle for 30 days without display of license plates or in-transit tags after purchasing the vehicle from a nonlicensed seller, provided one can produce the proper documentation upon demand. Bowers testified that he called the sheriff's department regarding in-transit tags and was told that

he did not need any because he had bought his vehicle from a private seller. Thus, Bowers was in full compliance with the motor vehicle licensing laws. However, from outward appearances, his vehicle looked no different from an unregistered vehicle. Some people who operate motor vehicles without license plates or in-transit tags clearly do so in an unlawful attempt to escape the requirements of the motor vehicle registration statutes.

Ward testified that he knew that private sellers cannot issue in-transit tags in Nebraska. Ward testified that if a vehicle did not have license plates or in-transit tags, it could be that the vehicle was purchased from a private seller and that it was being legally operated. In *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993), *cert. denied* 508 U.S. 940, 113 S. Ct. 2415, 124 L. Ed. 2d 638, a vehicle displaying dealer in-transit tags was stopped solely because the trooper wanted to check if the vehicle was within the in-transit period. We stated:

> "[P]olice can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the fourth amendment." *State v. Staten*, 238 Neb. 13, 18, 469 N.W.2d 112, 116 (1991). Accord, *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992); *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991). "Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Staten*, 238 Neb. at 18, 469 N.W.2d at 116-17.
>
> Reasonable suspicion, as a prerequisite for a constitutional investigatory stop, cannot be based only on a police officer's desire to verify compliance with motor vehicle registration statutes.

*State v. Childs*, 242 Neb. at 433, 495 N.W.2d 479-80.

Given that the presumption of innocence, which though unarticulated, is inherent in the criminal justice system, a constitutional investigatory stop cannot be made solely to check a motorist's documentation when the vehicle is properly displaying in-transit tags. *Id.*

Dealer issued in-transit tags are a visible badge that the motorist is in compliance with motor vehicle registration statutes and is engaging in wholly lawful conduct. Here, Bowers' operation of his vehicle was wholly lawful, yet there was no visible display that he was in compliance with motor vehicle registration statutes. That differs from the situation in *Childs.* Bowers urges us to apply our holding in *Childs* to these facts and conclude that the investigatory stop was constitutionally impermissible.

"[T]here may be some circumstances ' "in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." ' " *Id.* at 434, 495 N.W.2d at 480. Accord *State v. Thomas,* 240 Neb. 545, 483 N.W.2d 527 (1992).

> Because the purpose of an investigative stop "is to clarify ambiguous situations, 'even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police must be permitted to act *before* their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent.' "

*State v. Bridge,* 234 Neb. 781, 784, 452 N.W.2d 542, 545 (1990). Accord 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 3.8 (1984) (quoting *United States v. Holland,* 510 F.2d 453 (9th Cir. 1975), *cert. denied* 422 U.S. 1010, 95 S. Ct. 2634, 45 L. Ed. 2d 674).

In this circumstance, the ambiguous, but potentially lawful, conduct of driving without license plates or in-transit tags might justify the suspicion that criminal activity, to wit driving an unlicensed vehicle, was afoot. Unlike *Childs,* there was no outward manifestation of compliance. The "proper focus of an inquiry is not whether specific conduct is criminal or noncriminal, but whether a police officer's suspicion is reasonably related to the activity observed, criminal or noncriminal." *State v. Thomas,* 240 Neb. at 559, 483 N.W.2d at 537. Therefore, even if the conduct observed is otherwise lawful, if

the police officer has a particularized and objective basis under an assessment of the totality of the circumstances coupled with suspicion drawn through his or her experience and training that criminal activity has been or is about to be engaged in, an investigatory stop may be constitutionally proper. *State v. Thomas, supra*; *State v. Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981).

When an officer observes a vehicle without license plates or in-transit tags, a particularized and objective basis exists to justify a reasonable, articulable suspicion that the driver may be criminally avoiding the motor vehicle registration statutes. The State's interest in enforcing its registration laws supports a brief investigatory stop to ascertain whether the driver possesses the necessary documentation to establish that he or she is within the 30-day grace period to register the vehicle.

### PRIVILEGE AGAINST SELF-INCRIMINATION

In Bowers' second motion to suppress, he asserted that his constitutional rights were violated when he was allegedly taken into custody and asked to perform field sobriety tests prior to being informed of his *Miranda* rights.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Supreme Court held that the protection of the privilege against self-incrimination required certain warnings regarding rights and a voluntary, knowing, and intelligent waiver of those rights before incriminating responses to custodial interrogation can be admissible in evidence in a criminal proceeding. See, also, *State v. Veiman*, 249 Neb. 875, 546 N.W.2d 785 (1996).

*Miranda* implicates only statements that are both testimonial in nature and elicited during custodial interrogation. The U.S. Supreme Court has held that persons temporarily detained pursuant to an investigatory traffic stop are not "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).

In *Berkemer*, a highway patrol officer observed the defendant's car weaving in and out of its traffic lane. The officer stopped the defendant and asked him to get out of his vehicle. The defendant had difficulty standing, and the officer con-

cluded at that point that the defendant would be arrested for a traffic violation. At the roadside, the defendant was required to perform field sobriety tests and was questioned regarding his use of intoxicants.

Despite the significant curtailment of "freedom of action," the *Berkemer* Court held that routine traffic stops do not exert upon the detained person pressures that sufficiently impair the person's free exercise of the privilege against self-incrimination as to require that the person be informed of his or her constitutional rights. Traffic stops are presumptively temporary and brief. Motorists are generally obliged to answer a few questions and to wait while the officer checks license and registration. Most motorists are allowed to continue on their way, perhaps with a citation. Traffic stops may make a motorist uncomfortable, but are a comparatively nonthreatening detention and are generally not subject to the dictates of *Miranda*. *Berkemer v. McCarty, supra*.

We adopted the holding of *Berkemer* in *State v. Holman*, 221 Neb. 730, 380 N.W.2d 304 (1986). Holman was stopped after she ran two stop signs and because her vehicle did not have a front license plate. The officer could see four new truck tires in the open trunk of Holman's vehicle. While she sat in her car, Holman gave the officer her license and registration and was asked about the ownership of the tires. The officer asked Holman to step out of her vehicle and then placed her in the backseat of his cruiser while he ran a driver's history check, a check for warrants, and a registration check. While in her car and while in the cruiser, Holman was questioned about the tires. Holman repeatedly stated that the tires were not hers, but that she knew who the owner was. Holman declined to identify the owner. Holman was arrested after the routine checks revealed that there was an outstanding warrant for her arrest and that her driver's license had been suspended. The tires later proved to be stolen, and Holman was charged with theft by receiving stolen property. Holman sought to suppress her statements regarding the tires as violative of her right against self-incrimination.

Applying *Berkemer* to the facts in *Holman*, we concluded that Holman was not in custody when she was questioned

regarding the ownership of the tires and that there was no violation of Holman's Fifth Amendment rights. When a person is detained pursuant to a traffic stop, there must be some further action or treatment by the police to render the driver "in custody" and entitled to *Miranda* warnings.

The facts in this case do not justify Bowers' contention that his statements should have been suppressed. Ward was justified in stopping Bowers' vehicle because it lacked license plates and in-transit tags, a possible violation of the motor vehicle registration statutes. After verifying that Bowers had the proper documentation to show he was in compliance with motor vehicle licensing laws, Ward asked Bowers to come back to his police cruiser in order to verify Bowers' story as to why he was driving without a driver's license. In the cruiser, Ward asked Bowers to recite the alphabet and to count. Bowers asserts that his failure to recite the alphabet and to count correctly should be suppressed as violative of the privilege against self-incrimination. There is nothing in these facts that indicates any action or treatment by Ward that escalated this routine traffic stop to a level of custody so as to implicate *Miranda*.

Having held that Bowers was not in custody at the time he performed the field sobriety tests, we need not decide whether any aspect of the sobriety tests were testimonial in nature.

## CONCLUSION

Finding no Fourth or Fifth Amendment violations as claimed, the judgment of the Court of Appeals affirming Bowers' DUI conviction and sentence is affirmed.

AFFIRMED.