STATE OF NEBRASKA, APPELLEE, V. CLINTON BROOKS, JR., APPELLANT.

554 N.W.2d 168

Filed September 17, 1996. No. A-95-1118.

6

Dennis R. Keefe, Lancaster County Public Defender, and Joseph D. Nigro for appellant.

Norman Langemach, Jr., Lincoln City Prosecutor, for appellee.

HANNON and SIEVERS, Judges, and HOWARD, District Judge, Retired.

HOWARD, District Judge, Retired.

Clinton Brooks, Jr., was convicted in Lancaster County Court of operating a motor vehicle while his operator's license was suspended. The sentencing court subsequently enhanced the offense to operating a motor vehicle with a suspended license, second offense. On appeal, the Lancaster County District Court affirmed the judgment of the county court. Brooks now appeals to this court, arguing that the district court erred in affirming the county court's (1) denial of his motion to suppress and (2) enhancement of the offense to operating a motor vehicle with a suspended license, second offense. For the reasons set forth below, we affirm.

## FACTUAL BACKGROUND

On October 16, 1994, Officer Mark Unvert began an investigation into allegations that Brooks had been making unauthorized telephone calls on a calling card belonging to Cindy Vorderstrasse. According to Officer Unvert, Vorderstrasse indicated that numerous calls, in the amount of $118, had been charged to her missing calling card, although neither she nor her husband had made such calls. The record reflects that $42.19 worth of the calls were made in Lincoln. Vorderstrasse also reported that an acquaintance, Prudence Waters, had informed her that she had found a slip of paper in Brooks' belongings which contained Vorderstrasse's calling card number. Officer Unvert interviewed Waters, who confirmed that she had discovered a slip of paper with a calling card number among Brooks' personal effects. Officer Unvert was given an address and a description of Brooks' vehicle, but was unable to locate him. Officer Unvert concluded that he did not, at that time, have probable cause to arrest Brooks for fraud. Having decided that he needed to speak with Brooks, on October 17, Officer Unvert issued a broadcast for Brooks and his vehicle, which Officer Unvert described as follows: "I indicated to initiate a broadcast for Clinton Brooks, Junior, indicating he was a black male, 5'10" tall, 205 pounds. I also put on the broadcast possibly driving a gray and black Cadillac with license plate number, 1-County-S-Sam-5-8-9-5." In the broadcast, Officer Unvert directed the other officers to "identify the party, interview and take the appropriate action."

The stop in question occurred on November 29, 1994, when Officer Joanne Jindrick was told by another officer that Brooks' vehicle was wanted in regards to a broadcast. According to Officer Jindrick, an Officer Ashley "observed the vehicle and since he was not able, he was on a — a bicycle, he was not able to catch up to the vehicle to stop it. He requested assistance and I was close by." Officer Jindrick caught up with the silver Cadillac, Nebraska license plate No. 1-S5895, westbound on L Street near 9th Street. Officer Jindrick activated her cruiser's red lights, and the Cadillac stopped on the Capitol Parkway West overpass. Officer Jindrick noted from a copy of the broadcast in her car that the Cadillac matched the broadcast description of the vehicle. Officer Jindrick admitted, however, that she did not stop Brooks' vehicle pursuant to a warrant nor did she stop the vehicle as the result of a traffic violation. When Officer Jindrick asked Brooks for his operator's license, he told her that it had been suspended. After verifying that Brooks' license had indeed been suspended, Officer Jindrick issued him a citation. Officer Jindrick also explained her reason for stopping him: "That there was a broadcast for his vehicle that he was driving and that we needed to discuss what had occurred in regards to this broadcast." According to Officer Jindrick, Brooks immediately started explaining the circumstances. Officer Jindrick subsequently took Brooks to the police station, where she interviewed him regarding the fraud investigation. Although it appears no charges were ever filed against Brooks as a result of the fraud investigation, Brooks was charged with operating a motor vehicle while his license was suspended, in violation of Lincoln Mun. Code § 10.16.060 (1993).

Brooks filed a motion to suppress, contending that the stop violated his constitutional rights. The Lancaster County Court overruled the motion, as well as Brooks' objection at trial, and subsequently found Brooks guilty of operating a motor vehicle with a suspended license. At Brooks' enhancement hearing, the court admitted, over Brooks' objections, two exhibits. The first exhibit contained a copy of a prior failure to appear conviction and is of no relevance. The second exhibit introduced, dated September 23, 1994, was a copy of a checklist docket entry

showing that Brooks had pled guilty in Douglas County Court, pursuant to a plea agreement, to the charge of operating a motor vehicle during a period of suspension or revocation, for which he received a sentence of 7 days' imprisonment and a license suspension for 12 months. The relevant part of the checklist is as follows:

☒ Defendant advised of the nature of the above charges, all possible penalties, and each of the following rights: Counsel; Trial; Jury Trial; Confront Accusers; Subpoena Witnesses; Remain Silent; Request Transfer to Juvenile Court; Defendant's Presumption of Innocence; State's Burden of Proof Beyond Reasonable Doubt.

☒ Defendant waived each of the above and foregoing rights.

☒ Plea(s) entered knowingly, understandingly, intelligently, voluntarily, and a factual basis for plea(s) found, defendant advised of right to appeal conviction and sentence.

The county court subsequently enhanced Brooks' sentence to operating a motor vehicle with a suspended license, second offense, and sentenced him to 90 days in jail, a $500 fine, and a 2-year license suspension. The Lancaster County District Court affirmed the judgment of the county court.

## ASSIGNMENTS OF ERROR

Brooks contends that the district court erred in affirming the county court's (1) denial of his motion to suppress, challenging the stop and arrest which was in violation of the Fourth Amendment to the U.S. Constitution, and (2) enhancement of the offense to operating a motor vehicle with a suspended license, second offense.

## STANDARD OF REVIEW

 Upon appeal from a county court in a criminal case, a district court acts as an intermediate appellate court, rather than as a trial court, and its review is limited to an examination of the county court record for error or abuse of discretion. *State v. Styskal*, 242 Neb. 26, 493 N.W.2d 313 (1992); *State v. Douglass*, 239 Neb. 891, 479 N.W.2d 457 (1992); *State v.*

10

*Boham*, 233 Neb. 679, 447 N.W.2d 485 (1989). Both a district court and a higher appellate court generally review appeals from a county court for error appearing on the record. *State v. Styskal, supra*; *State v. Dean*, 2 Neb. App. 396, 510 N.W.2d 87 (1993). Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996).

## ANALYSIS

*Investigatory Stop.*

A trial court's ruling on a motion to suppress is to be upheld unless its findings of fact are clearly erroneous. *State v. Bowers, supra*. In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

Police can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if, as argued here, probable cause is lacking under the Fourth Amendment. *Id.*; *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993), *cert. denied* 508 U.S. 940, 113 S. Ct. 2415, 124 L. Ed. 2d 638. Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *State v. Bowers, supra*; *State v. Childs, supra*. A finding of a reasonable suspicion must be determined on a case-by-case basis. *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991).

In determining whether facts known to a law enforcement officer at the time of the investigatory stop provided a reasonable basis for the stop, an appellate court must consider the totality of the circumstances, including all of the objective observations and considerations, as well as the suspicions, drawn by a trained and experienced law enforcement officer by inference and deduction that the individual stopped is, has been,

or is about to be engaged in criminal behavior. *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), *cert. denied* 510 U.S. 836, 114 S. Ct. 113, 126 L. Ed. 2d 78; *State v. Mahlin, supra.*

At the suppression hearing, Officer Unvert testified that Vorderstrasse told him that unauthorized telephone calls had been charged to her missing calling card. Officer Unvert further testified that Waters had found a slip of paper containing Vorderstrasse's calling card number among Brooks' personal effects during Brooks' stay at her house. After an unsuccessful attempt at locating Brooks, Officer Unvert issued a radio broadcast which eventually led to Officer Jindrick's stop of Brooks' car. We note that Officer Unvert's testimony provided a sufficient factual foundation justifying Officer Jindrick's stop of Brooks' car. See *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977) (reasonably founded suspicion to stop vehicle cannot be based solely on receipt by stopping officer of radio dispatch to stop described vehicle without any proof of factual foundation for relayed message), *cert. denied* 434 U.S. 833, 98 S. Ct. 117, 54 L. Ed. 2d 93.

We conclude that Officer Unvert had a particularized and objective basis from the reports of Vorderstrasse and Waters for suspecting Brooks of criminal activity, namely the unauthorized use of Vorderstrasse's calling card. We further conclude, regardless of whether the stop was initiated to investigate past criminal activity or ongoing criminal conduct, that the police had a reasonable suspicion, grounded in specific and articulable facts, that Brooks had been or was currently engaged in criminal behavior. See, e.g., *United States v. Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985). See, also, *State v. Blankenship*, 757 S.W.2d 354 (Tenn. App. 1988). Consequently, the trial court did not err in overruling Brooks' motion to suppress.

*Enhancement Proceeding.*

A sentencing court's determination concerning the constitutional validity of a prior plea-based conviction, used for enhancement of a penalty for a subsequent conviction, will be upheld on appeal unless the sentencing court's determination is

clearly erroneous. *State v. Reimers*, 242 Neb. 704, 496 N.W.2d 518 (1993).

The Lancaster County Court convicted Brooks of operating a motor vehicle while his operator's license was suspended, in violation of Lincoln Mun. Code § 10.16.060. At the enhancement hearing, the State introduced a copy of a Douglas County Court order dated September 23, 1994, over Brooks' objection. The order, which was in the form of a checklist, reflected that Brooks had pled guilty to operating a motor vehicle during a period of suspension, in violation of Neb. Rev. Stat. § 60-4,108 (Reissue 1993).

We observe that a copy of the Lincoln ordinance, though present in the transcript, was not in evidence at trial or at the enhancement proceeding. The Nebraska Supreme Court has consistently held that an appellate court will not take judicial notice of an ordinance not in the record, but assumes that a valid ordinance creating the offense charged exists, that the evidence sustains the findings of the trial court, and that the sentence is within the limits set by the ordinance. *State v. Buescher*, 240 Neb. 908, 485 N.W.2d 192 (1992); *State v. Lewis*, 240 Neb. 642, 483 N.W.2d 742 (1992); *State v. King*, 239 Neb. 853, 479 N.W.2d 125 (1992). We therefore assume that the ordinance permits enhancement of the violation to second offense and that Brooks' sentence of 90 days' imprisonment, a $500 fine, and a 2-year license suspension was within the limits set by the ordinance.

Challenges to prior plea-based convictions for enhancement proceedings may be made only for the failure of the face of the transcript to disclose whether the defendant had counsel or knowingly, understandingly, intelligently, and voluntarily waived counsel at the time the pleas were entered. *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996). In a proceeding for an enhanced penalty, the State has the burden to show that the record of a defendant's prior conviction, based on a plea of guilty, affirmatively demonstrates that the defendant was represented by counsel, or that the defendant, having been informed of the right to counsel, voluntarily, intelligently, and knowingly waived that right. *Id.*

A checklist docket entry is sufficient to establish that a defendant has been advised of his rights and has waived them. *Id.* A checklist or other such docket entry which is made by one authorized to make it imports verity, and unless contradicted, it stands as a true record of the event. *Id.*

Brooks essentially contends that although the checklist shows that he was informed of his right to counsel and further that he waived that same right, it is deficient in that it fails to indicate that he voluntarily, knowingly, and intelligently waived that right. The relevant portion of the checklist is reproduced below:

ⓧ Defendant advised of the nature of the above charges, all possible penalties, and each of the following rights: Counsel; Trial; Jury Trial; Confront Accusers; Subpoena Witnesses; Remain Silent; Request Transfer to Juvenile Court; Defendant's Presumption of Innocence; State's Burden of Proof Beyond Reasonable Doubt.

ⓧ Defendant waived each of the above and foregoing rights.

ⓧ Plea(s) entered knowingly, understandingly, intelligently, voluntarily, and a factual basis for plea(s) found, defendant advised of right to appeal conviction and sentence.

The Nebraska Supreme Court in *State v. Orduna, supra,* recently dealt with the same argument to what appears to be the same checklist. The court concluded:

Accordingly, if the trial court finds that a plea was entered knowingly, understandingly, intelligently, and voluntarily, then it is necessarily true that if the record reflects counsel was waived, this right was waived knowingly, understandingly, intelligently, and voluntarily.

This is so because logically, a plea cannot be legally sufficient unless those elements underlying the plea are also legally sufficient. Thus, in the instant case, when the trial court found Orduna's guilty plea legally sufficient, it likewise found his waiver of counsel legally sufficient.

*Id.* at 611, 550 N.W.2d at 362-63.

Based on *Orduna*, we cannot say that the county court's finding was clearly erroneous.

## CONCLUSION

We conclude that the county court did not err in overruling Brooks' motion to suppress. We also conclude that the sentencing court did not err in admitting evidence of Brooks' prior conviction. The judgment of the county court, as affirmed by the district court, is affirmed.

AFFIRMED.