STATE OF NEBRASKA, APPELLEE, V.
ROGER G. KLING, APPELLANT.

599 N.W. 2d 240

Filed August 24, 1999.   No. A-98-862.

Byron M. Johnson, Scotts Bluff County Public Defender, and Bernard J. Straetker for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HANNON, MUES and CARLSON, Judges.

MUES, Judge.

## INTRODUCTION

Roger G. Kling was convicted of possession of a controlled substance. Scottsbluff police officer Phillip Eckerberg stopped Kling after observing him driving a motor vehicle on the public streets when said vehicle did not have license plates, but did have handwritten in-transit tags in the front and rear windows. Kling alleges that the trial court erred in failing to suppress evidence seized after the unlawful stop. More specifically, Kling argues that there was not reasonable suspicion to support the investigatory stop because, although he was not displaying license plates, he was displaying in-transit tags. Finding that there was reasonable suspicion to stop the vehicle, we affirm the conviction.

## BACKGROUND

At 8:15 a.m. on May 15, 1998, Eckerberg was on routine patrol when he observed a blue 1977 Pontiac Trans Am being operated without a front license plate. Eckerberg observed a "piece of paper with the words, 'In Transit' written, and the date on that piece of paper" in the front window. He turned around and began following the vehicle, noticing that there was no rear license plate and a "similar piece of paper with the word, 'In-

transit' and a date written on it" was taped to the back window. After confirming that there was no license plate on the rear of the vehicle, Eckerberg stopped the vehicle.

Upon asking for Kling's license, proof of ownership, and proof of insurance, Eckerberg observed a tightly folded dollar bill fall out of Kling's billfold. The officer immediately suspected that the dollar bill contained a controlled substance and asked Kling if he could see the dollar bill. Kling handed him the dollar bill, which was folded into a 1-inch square. Kling also handed Eckerberg his driver's license, but could not produce proof of insurance or ownership. Eckerberg returned to his patrol car and upon unfolding the dollar bill, found it contained a light brown crystalline powder that appeared to be methamphetamine. He immediately called for assistance. When another officer arrived, Kling was placed under arrest. During the subsequent search of his car, a small plastic baggie was found underneath the dash, and a razor blade with residue on it was found in the center console. The powder in the dollar bill tested positive for methamphetamine.

Kling was charged with possession of a controlled substance, possession of drug paraphernalia, lack of proof of financial responsibility, and lack of proper registration. Kling filed a motion to suppress, arguing that Eckerberg did not have the authority to stop him because there was no reasonable suspicion, as the presence of handwritten in-transit tags was not a violation of the law. At the hearing on the motion, Eckerberg testified that his reason for stopping the vehicle was the "fact that [it] had no license plate and the home-made in-transits were not valid."

The district court concluded that Eckerberg did have reasonable suspicion to stop the vehicle because of the handwritten in-transit tags, and, relying on *State v. Reiter*, 3 Neb. App. 153, 524 N.W.2d 575 (1994), the court determined that Eckerberg was justified in stopping the vehicle to demand a presentation of the registration and title pursuant to Neb. Rev. Stat. § 60-320.01 (Reissue 1998). Therefore, the motion was overruled.

The parties agreed to a stipulated trial, at which Kling preserved his motion to suppress. All charges except possession of a controlled substance were dismissed, and the parties agreed to immediate sentencing. The court found Kling guilty of posses-

sion of methamphetamine, a Class IV felony, and sentenced him to 21 days in jail.

## ASSIGNMENT OF ERROR

Kling alleges that the trial court erred in denying his motion to suppress.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). A trial court's ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo. However, findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *In re Interest of Andre W.*, 256 Neb. 362, 590 N.W.2d 827 (1999).

## ANALYSIS

Both the U.S. Const. amend. IV and Neb. Const. art. I, § 7, guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated." Thus, to determine whether the evidence of the methamphetamine obtained after, and produced by, the stop was constitutional, we must determine whether Eckerberg's stop of Kling's vehicle violated these constitutional mandates.

■ Police can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the Fourth Amendment. *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997); *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. *State v. Tierney*, 7 Neb. App. 469, 584 N.W.2d 461 (1998). The question before this

court is whether Eckerberg had reasonable suspicion to perform an investigatory stop of Kling's vehicle when he observed it without license plates, but with handwritten in-transit tags in the front and rear windows. Reasonable suspicion, as a prerequisite for a constitutional investigatory stop, cannot be based only on a police officer's desire to verify compliance with motor vehicle registration statutes. *State v. Bowers, supra*. When an officer observes a vehicle without license plates or in-transit tags, a particularized and objective basis exists to justify a reasonable, articulable suspicion that the driver may be criminally avoiding the motor vehicle registration statutes, thereby supporting a brief investigatory stop. *Id*.

Kling argues that Eckerberg did not have a reasonable suspicion to stop his vehicle. Relying on *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993), and § 60-320.01, Kling alleges that the presence of handwritten in-transit tags is not a violation of law and that the desire to verify compliance with registration laws does not amount to reasonable suspicion sufficient to support the stop.

The State argues that handwritten in-transit tags have the same effect as no in-transit tags at all, as they are not an approved method of showing that the vehicle has not yet been licensed. Thus, relying on the rationale of *State v. Bowers, supra*, the State concludes that since there were no license plates or valid in-transit tags displayed, Eckerberg had a particularized and objective basis for believing the registration laws were being violated.

Pursuant to Neb. Rev. Stat. § 60-323 (Reissue 1998), no person shall operate, drive, or park a motor vehicle on the public highways unless such vehicle at all times has displayed one number plate on the back thereof and one number plate on the front thereof. A statutory exemption from this requirement is provided to purchasers of new or used vehicles. See Neb. Rev. Stat. § 60-320 (Reissue 1998).

Purchasers of new or used vehicles from a licensed dealer are provided in-transit tags to display in lieu of license plates. These in-transit tags must contain the words "In Transit" and the registration number. The form and numbering system is prescribed by the Department of Motor Vehicles. See § 60-320. There is no

statutory provision for the issuance of in-transit tags to purchasers of vehicles from nonlicensed sellers. However, § 60-320.01 provides, in pertinent part, that one can lawfully operate an unregistered motor vehicle for 30 days without display of license plates or in-transit tags after purchasing the vehicle from a nonlicensed seller, provided that "[u]pon demand of proper authorities, there shall be presented by the person in charge of such vehicle . . . a certificate showing the date of transfer and the certificate of title to such vehicle with assignment thereof duly executed."

In *State v. Childs, supra*, the Nebraska Supreme Court held that reasonable suspicion cannot be based solely on a police officer's desire to verify compliance with the motor vehicle registration statutes. In that case, the officer stopped the vehicle solely to see if the vehicle was within the in-transit period after observing in-transit tags in the windows. The court, finding that the defendant was entitled to the presumption of innocence, found that the officer lacked a reasonable and articulable suspicion or basis to stop the vehicle.

Interpreting *State v. Childs, supra*, in *State v. Bowers*, 250 Neb. 151, 160, 548 N.W.2d 725, 731 (1996), the Supreme Court found that "a constitutional investigatory stop cannot be made solely to check a motorist's documentation when the vehicle is properly displaying in-transit tags." The *Bowers* court continued:

> Dealer issued in-transit tags are a visible badge that the motorist is in compliance with motor vehicle registration statutes and is engaging in wholly lawful conduct. Here, Bowers' operation of his vehicle was wholly lawful, yet there was no visible display that he was in compliance with motor vehicle registration statutes. That differs from the situation in *Childs*.

250 Neb. at 160, 548 N.W.2d at 731.

The *Bowers* court concluded that an officer who observed a vehicle being driven with no license plates and no in-transit tags had a reasonable articulable suspicion that the driver may be avoiding the motor vehicle registration statutes, which supported a brief investigatory stop.

> When an officer observes a vehicle without license plates or in-transit tags, a particularized and objective basis

exists to justify a reasonable, articulable suspicion that the driver may be criminally avoiding the motor vehicle registration statutes. The State's interest in enforcing its registration laws supports a brief investigatory stop to ascertain whether the driver possesses the necessary documentation to establish that he or she is within the 30-day grace period to register the vehicle.

*Id.* at 161, 548 N.W.2d at 731.

As stated, § 60-320(3)(d) provides for in-transit tags in this state. It provides that dealers should issue two in-transit tags containing the words "In Transit" and a registration number for the sale and delivery of a passenger vehicle. These tags are required to be in the form prescribed by the Department of Motor Vehicles, and the dealer is required to keep a record of the registration number. In the vernacular of *State v. Bowers, supra,* these tags are a visible "badge" of compliance with motor vehicle registration statutes. As previously stated, there is no provision for handwritten in-transit tags from a nonlicensed seller. We conclude that this lack of statutory authorization with the attendant registration process, as in the case of dealer-issued tags, results in such handwritten in-transit tags not being entitled to the presumption of compliance that dealer-issued tags are cloaked with under *Bowers.*

The in-transit tags displayed by Kling did not comply with § 60-320(3)(d). Thus, Kling's vehicle was being operated without a valid outward manifestation of compliance with the registration statutes. Under the facts and circumstances of this case, we conclude that Eckerberg had a reasonable suspicion that Kling was violating the motor vehicle registration statutes when he observed Kling's vehicle being driven without license plates and without dealer in-transit tags. Thus, Eckerberg was justified in stopping Kling in order to demand a certificate showing the date of the transfer and the certificate of title to such vehicle with assignment thereof duly executed. See § 60-320.01. In the course of asking for these documents, Eckerberg observed the folded dollar bill containing the methamphetamine.

## CONCLUSION

There was reasonable suspicion to support an investigatory stop of Kling's vehicle when it was observed without license plates or authorized in-transit tags. Therefore, the trial court correctly denied Kling's motion to suppress evidence lawfully seized as a result of that stop.

AFFIRMED.