IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. CAPPUCCI


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

RICCARDO CAPPUCCI, APPELLANT.


Filed December 11, 2018.    No. A-18-054.


Appeal from the District Court for Seward County: JAMES C. STECKER, Judge. Affirmed.

Gregory C. Damman, of Blevens & Damman, for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Riccardo Cappucci was pulled over on Interstate 80 for following another vehicle too closely. A subsequent search of his vehicle resulted in Cappucci's conviction in the Seward County District Court for possession of a controlled substance (marijuana) with intent to distribute. Cappucci appeals the district court's denial of his motion to suppress evidence which was based on his claim that his vehicle was not lawfully stopped. We affirm.

## BACKGROUND

After finding 470 pounds of marijuana in Cappucci's vehicle once he was pulled over on the interstate, Cappucci was charged with two counts of possession with intent to distribute and two counts of possession of a controlled substance without a tax stamp. Cappucci subsequently filed a motion to suppress evidence, claiming that the "initial detention and arrest" were made without probable cause or reasonable suspicion that a crime had been committed. He claimed the

stop of his vehicle was "not justified by an objective manifestation, based upon the totality of the circumstances that [he] had been, was, or was about to be engaged in criminal activity." He also claimed the arresting officer did not have probable cause or reasonable suspicion that a crime had been committed "so as to lawfully search the vehicle" and that the officer "illegally detained [him] beyond the time period that is constitutionally allowed after completion of the purposes [of] a traffic stop." However, on appeal, Cappucci only challenges the initial stop, and we limit our opinion accordingly. Cappucci claimed that any statements he made and evidence seized from him were obtained by procedures and tactics that were in violation of his federal and state constitutional rights.

STATE'S EVIDENCE

At the hearing on Cappucci's motion to suppress, the State called Sergeant Michael Vance of the Seward County Sheriff's Office as a witness. Sergeant Vance had been with the Seward County Sheriff's Office for 11 years; he had almost 30 years of total law enforcement experience. Sergeant Vance testified that on September 22, 2016, he was "doing highway interdiction." Shortly after 2 p.m., he was with Igor (a narcotics certified canine), headed eastbound on Interstate 80 in a marked patrol car, a Ford Explorer. Sergeant Vance frequently patrolled the interstate, which runs through Seward County. He recalled traffic conditions were moderate and that there were not any sort of weather conditions that were hampering people's ability to drive. Sergeant Vance said he had an in-car camera and body camera both capable of capturing video and audio, and that each camera was operational that day; the district court received into evidence exhibit 1 (body camera video) and exhibit 2 (in-car camera video), each identified by Sergeant Vance as related to his encounter with Cappucci.

Sergeant Vance recalled that the first thing that drew his attention to Cappucci's vehicle was that he (Sergeant Vance) was going to pass Cappucci's vehicle and another vehicle on the right-hand side because "they were traveling just a little bit under the speed limit [in the left passing lane]." He described Cappucci's vehicle as a "cargo-type van" and stated that there were one or two vehicles behind Cappucci's vehicle. Sergeant Vance claimed that as he came up in the right lane, he "noticed that [Cappucci's] van was very close to the 18-wheeler that was in front of [Cappucci]." Sergeant Vance testified that "right as [he came] up almost even with [Cappucci's] van, [he] observed that [Cappucci] had less than a car length between him and the trailer on the 18-wheeler." Sergeant Vance then slowed down and pulled in behind Cappucci and manually activated his in-car camera.

Sergeant Vance described his review of the in-car camera video footage, noting that initially the view of the 18-wheeler in front of Cappucci's van is obstructed from (the camera's) view by the van itself. As time passed, the 18-wheeler is able to be seen because of the "shifting, the shadows" of where people were in the lane change. He said it was correct that, at the time the in-car camera is first turned on, even though you cannot see the 18-wheeler because it is obstructed by the van, you can see the shadow of the 18-wheeler and the van itself because of the sun. He said the shadows are projected to the left side of Cappucci's vehicle due to the direction of the sun. He testified that "[y]ou can tell by those shadows that [Cappucci's vehicle and the 18-wheeler]

- 2 -

were very close" and that the shadows (seen in the video) give an accurate depiction of how close they were to each other in addition to what Sergeant Vance was seeing.

Sergeant Vance further described the distances he observed of Cappucci's vehicle in relation to the 18-wheeler, saying, "[f]rom my first observation, when I got up beside [Cappucci's] van, he had less than half a car length between [them] or right at half a car length. It was not enough room to pull my vehicle in between them." When asked whether he observed that distance change, Sergeant Vance answered, "[n]ot very much. After I pulled in behind [Cappucci], he maintained between a car length -- right around a car length behind the [18-wheeler]." Sergeant Vance maintained that even though Cappucci slowed down "a little bit to create a little bit of distance between [the 18-wheeler and Cappucci's van]," that "[Cappucci] still hadn't created enough distance between [them]." He stated that "the industry standard for [a safe] distance of traveling 70, 75 miles an hour is three to three and a half car lengths," and this standard was applicable to Cappucci since, according to Sergeant Vance, Cappucci was traveling at 74 m.p.h. He called Cappucci's following distance "unsafe."

After following Cappucci's vehicle for a couple miles, Sergeant Vance activated his emergency lights to conduct a traffic stop because Cappucci "hadn't backed off the 18-wheeler trailer."

DEFENDANT'S EVIDENCE

Cappucci testified that as he was eastbound in Seward County he noticed a law enforcement officer in a marked vehicle (a Charger) pass him as Cappucci was traveling in the right lane. Cappucci said he was driving the speed limit and that he did not observe Sergeant Vance's Ford Explorer at that time. At some point after the Charger went by, the "right lane started to slow down, so [he] signaled into the left lane . . . [a]nd as [he] was proceeding into the left lane, [he] passed the [F]ord Explorer that was in the right lane." Cappucci claimed he passed by the Ford Explorer "at least five minutes" prior to what he saw as the starting point on Sergeant Vance's in-car camera video. Cappucci alleged that the in-car camera video started with Cappucci in the left lane and that it did not show that there was slow traffic in the right lane that caused him to do what was seen on the video.

Cappucci said that as he passed Sergeant Vance, the sergeant "pulled out behind me and we were proceeding in the left lane, so [Cappucci] assumed he wanted to pass, so [Cappucci] moved back into the right lane and the [sergeant] proceeded to move back into the right lane with [Cappucci]." Cappucci said the distance that the sergeant was behind him in the passing lane made Cappucci think the sergeant wanted to pass and he estimated that the sergeant was at that point "one car length" behind Cappucci. And, Cappucci claimed that once they were both in the right lane, the sergeant was "one car length" behind him. Cappucci alleged that once they were in the right lane, traffic was starting to slow down so he moved into the left lane and Sergeant Vance then followed him into the left lane, and "as [Cappucci] moved into the left lane, the 18-wheeler pulled out in front of us, so -- in front of me." On cross-examination, Cappucci clarified that the 18-wheeler pulled in front of him, and in the act of the 18-wheeler pulling in front of him from right to left, it was immediately too close. Cappucci claimed to have "immediately stepped on the

brakes," but that he "didn't want to step on the brakes too hard because of how close [Sergeant Vance's Ford Explorer] was to [Cappucci]."

Cappucci stated that he and Sergeant Vance continued in the passing lane and that "[a]s that 18-wheeler pulled out in front of us, it was the 18-wheeler, [Cappucci], Sergeant Vance . . . maybe a couple [of] cars behind us. We were passing a slow-moving tractor-trailer in the right-hand [lane]." Cappucci said that was the point that can be seen on the in-car camera video. Cappucci claimed that the act of the 18-wheeler pulling over into the passing lane in front of him "had to be about maybe . . . 20 seconds prior to the video starting." Cappucci asserted that Sergeant Vance was "[o]ne car length or less" behind him when the 18-wheeler pulled in front of him. Cappucci "noticed that [the sergeant] was very close to [him]," so that when the 18-wheeler pulled out in front of him, "[he] didn't want to brake too hard because there was a good amount of traffic building behind [them], so [he] just wanted to keep a safe distance between [him] and the [18-wheeler] and between [him] and [Sergeant Vance's Ford Explorer] behind [him]." Cappucci asserted that once the 18-wheeler in front of him passed the slow-moving tractor-trailer, the 18-wheeler moved over, and Cappucci then moved in front of the 18-wheeler because he "thought that the officer wanted to pass." Cappucci said that after that, he was immediately pulled over by Sergeant Vance.

DISTRICT COURT'S DENIAL OF MOTION TO SUPPRESS

The district court filed a memorandum opinion and order concluding that Sergeant Vance had (1) probable cause to stop Cappucci based on an observed traffic violation and (2) a reasonable, articulable suspicion that Cappucci was engaged in criminal activity. The district court denied Cappucci's motion to suppress.

TRIAL, SENTENCING, AND APPEAL

A stipulated bench trial was held in November 2017. The district court granted the State's motion to dismiss three of the four counts filed against Cappucci. The district court found beyond a reasonable doubt that Cappucci knowingly and intentionally possessed marijuana weighing approximately 470 pounds with the intent to distribute, deliver, or dispense. On January 12, 2018, the district court sentenced Cappucci to 3 years' probation, which included 60 days in jail which could be waived by the court. Cappucci appeals.

ASSIGNMENT OF ERROR

Cappucci claims the district court erred by finding that his vehicle was lawfully stopped and overruling his motion to suppress.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Nunez*, 299 Neb. 340, 907 N.W.2d 913 (2018). Regarding historical facts, an appellate court reviews the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Nunez, supra.*

- 4 -

As previously noted, Cappucci's claim on appeal is limited to the lawfulness of the traffic stop. Cappucci contends that Sergeant Vance violated his rights under the Fourth Amendment to the U.S. Constitution "when [Sergeant Vance] pulled him over for following too closely because it was obvious that [Cappucci's] driving behavior was dictated by [Sergeant] Vance behind him and the 18-wheeler that abruptly pulled out in front of him," and further that "any reasonable officer observing these circumstances would have understood that no traffic violation had occurred." Brief for appellant at 12. Cappucci argues that "knowing [Sergeant] Vance was close behind him, [Cappucci] did not feel it was safe or prudent, given the road and traffic conditions, to hit his breaks [sic] and increase the following distance and instead tried to maintain the same distances between his van, the semi, and [Sergeant] Vance." *Id.* at 15. Cappucci contends that the "[district court's] opinion refers only to what it saw in the video and makes no reference to [Cappucci's] testimony explaining what happened immediately before he was pulled over." *Id.* at 14.

In the district court's order on the motion to suppress, it stated that Cappucci argued that "based on shadows, it appears Sergeant Vance was following Cappucci at the same distance Cappucci was following the [18-wheeler]," and that the "[18-wheeler] pulled out in front of Cappucci leaving only the gap seen in the video." The district court concluded that Sergeant Vance had probable cause to stop Cappucci "for following too close" based on its review of the in-car camera video and Sergeant Vance's testimony; the district court stated,

> The start of the video is after the [18-wheeler] changed lanes in front of Cappucci. I[t] does appear that Sergeant Vance is following Cappucci at the same distance as Cappucci is following the shadow of the cargo on the [18-wheeler]. However[,] the shadow of the cargo on the [18-wheeler] is not the rear of the [18-wheeler]. The [18-wheeler] extends a full car length behind the cargo. Cappucci appears to be following the [18-wheeler] at the distance of no more than 1 car length, which Sergeant Vance testified was too close given the speed Cappucci was traveling.

We note that during cross-examination of Sergeant Vance at the motion to suppress hearing, when asked whether "a semi forced [Cappucci] into a following-too-close situation," Sergeant Vance answered that "[t]he vehicle did go in front of [Cappucci] . . . but [he thought he] explained to [Cappucci] that [Cappucci] should have backed off. And [Cappucci] said, yes, I should have backed off." A review of Sergeant Vance's body-camera video does reflect that when Sergeant Vance was explaining to Cappucci that the reason for the stop was due to Cappucci's distance in relation to the 18-wheeler, Sergeant Vance stated, "Yeah, [the 18-wheeler] came over in front of you, which is his fault, *but then you gotta back off, okay, you gotta let him in, don't follow that close . . .*" to which Cappucci answered, "Yeah, definitely." (Emphasis supplied.) The record supports that Sergeant Vance was aware that the 18-wheeler had pulled in front of Cappucci's vehicle, but the record nevertheless refutes that the closeness of the vehicles at that moment was the sergeant's reason for conducting the traffic stop. Rather, it was Cappucci's failure to "back off" from the 18-wheeler once it pulled in front of him. The district court did in fact make

note of Cappucci's argument that the 18-wheeler pulled out in front of Cappucci, but the court relied upon subsequent facts to support its conclusion.

Our review of the in-car camera video shows that the 18-wheeler was already positioned in front of Cappucci at the beginning of the video. Sergeant Vance testified that, at that point, Cappucci maintained "around a car length" behind the 18-wheeler and that, in addition to what Sergeant Vance observed, he could tell the proximity of Cappucci's vehicle to the 18-wheeler based on his review of the in-car camera video which showed the projection of shadows. The shadows of the 18-wheeler's cargo, which included large tires, and of Cappucci's vehicle are clearly visible in the in-car camera video as those vehicles travel in the left lane. The video confirms that the 18-wheeler extends at least a car length behind its cargo (which reached only to about the midpoint of the area available on the 18-wheeler for cargo). The district court's finding that Cappucci was following the 18-wheeler at no more than one car length is reasonable given the closeness of the shadows and view of where the 18-wheeler's cargo was situated.

The in-car camera video shows Sergeant Vance followed Cappucci for a while before the stop was initiated; Sergeant Vance testified that he followed Cappucci for a couple miles before activating his emergency lights to conduct the traffic stop because Cappucci "hadn't backed off the 18-wheeler trailer." His testimony generally provided that at Cappucci's rate of travel of 74 m.p.h., the industry standard for a safe distance of travel is "three to three and a half car lengths." While Cappucci maintains that he did not commit a traffic violation, based on our review of the record, we cannot conclude that the district court's findings of historical fact are clearly erroneous. Thus, it is upon these facts that we proceed to independently address whether those facts violate Fourth Amendment protections.

Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. See *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections. *State v. Barbeau, supra*. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id.* See, also, *State v. Draganescu*, 276 Neb. 448, 459, 755 N.W.2d 57, 73 (2008) ("in determining whether the government's intrusion into a motorist's Fourth Amendment interests was reasonable, the question is not whether the officer issued a citation for a traffic violation or whether the State ultimately proved the violation," but rather "a stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred."). The Nebraska Supreme Court has "long recognized that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle." *State v. Barbeau,* 301 Neb. at 300, 917 N.W.2d at 921.

Sergeant Vance pulled Cappucci's vehicle over for following too closely to the trailer of the 18-wheeler when Cappucci had not "backed off." The sergeant reached this conclusion based on his observations of the vehicles and the shadows from which he could determine the proximity of the vehicles. Following too closely is a violation of Neb. Rev. Stat. § 60-6,140(1) (Reissue 2010), which provides that "[t]he driver of a motor vehicle shall not follow another vehicle more

closely than is reasonable and prudent, and such driver shall have due regard for the speed of such vehicles and the traffic upon and the condition of the roadway."

Accordingly, Sergeant Vance had probable cause to stop Cappucci's vehicle after the sergeant observed the commission of a traffic violation. See *State v. Barbeau, supra.* See, also, *State v. Draganescu, supra* (officer had probable cause to stop defendant's vehicle based on violation of § 60-6,140(1); officer testified that he used objective standard for determining whether van was following truck too closely and that he observed van following one car length behind semi-truck while both vehicles were traveling over 70 m.p.h. in rain); *State v. McGinnis*, 8 Neb. App. 1014, 608 N.W.2d 605 (2000) (officer had probable cause to stop defendant's vehicle after officer observed defendant committing traffic offense of following too closely under § 60-6,140(1); officer observed defendant "getting 'right up real close to the bumper of the vehicles ahead of him following way too close - well, less than the two-second rule . . . and went on around [the pack]'[.]").

In summary, we find no clear error in the district court's findings of facts; the record supports that Cappucci was following the 18-wheeler too closely given his speed of travel. Although Cappucci suggests his ability to create more space between his vehicle and the 18-wheeler was impeded by Sergeant Vance following too closely behind him, there was enough time for Cappucci to slow his vehicle without endangering any vehicles behind him. A law enforcement officer's observation of a traffic offense gives the officer probable cause to stop the vehicle and does not violate the Fourth Amendment.

## CONCLUSION

The stop of Cappucci's vehicle was lawful; the district court properly overruled the motion to suppress evidence. The judgment of the district court is affirmed.

AFFIRMED.