IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. JONES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLANT,

V.

ERIC A. JONES, APPELLEE.

Filed December 20, 2022.   No. A-22-532.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Patrick C. McGee, Deputy Douglas County Attorney, and Curtis Cook, Senior Certified Law Student, for appellant.

Thomas C. Riley, Douglas County Public Defender, and Jessica C. West for appellee.

RIEDMANN, Judge.

## INTRODUCTION

The State has filed this interlocutory appeal to a single judge of this court in accordance with Neb. Rev. Stat. § 29-824 (Reissue 2016). The State alleges that the district court for Douglas County erred in granting Eric A. Jones' motion to suppress the evidence seized. The district court's order is affirmed.

## BACKGROUND

Omaha Police Department officers pulled over Jones' vehicle on February 23, 2022, at approximately 4:09 a.m. for failure to signal a turn. Jones was driving a vehicle with South Dakota license plates. Jones explained to the officers that the vehicle was in his name but belonged to his girlfriend who lived in Arizona; however, she was unable to register it in Arizona because it would not pass the emissions test. He also advised the officers that the plates would not match the vehicle, as they were given to him by a friend to use until the weather turned nicer and Jones was able to

ride his motorcycle. Jones provided his driver's license and a copy of the purchase agreement to the officers. He also offered them a copy of the failed emissions test.

At the time of the traffic stop, Jones had a front seat passenger, Kassandra Shoemake. Jones was providing a ride to Shoemake, the girlfriend of Jones' coworker, although Jones and Shoemake did not know each other. Shoemake had multiple bags with her in the vehicle and in response to a question seeking her address, she responded she was using her parents' address until she could get back on her feet. Based upon the information in our record, it appears the officers believed she was homeless at the time.

The officers returned to their cruiser to run data checks on Jones and Shoemake. They determined that the car's VIN matched the vehicle and that the license plates were not reported stolen. They also discovered that Jones had multiple prior felony convictions for felony assault, use of a firearm, firearm discharge, and drug distribution. Shoemake had an active warrant for her arrest for motor vehicle violations.

Prior to exiting their cruiser after obtaining the above information, the officers discussed how to proceed. Officer Daniel Cleveland advised his partner, Officer Jarid Freyermuth, that Cleveland would keep his eyes on Jones and Freyermuth would pull Shoemake out and arrest her. Once she was secured, Freyermuth was to search her and if he found anything, he was to let Cleveland know and then he would "pull [Jones] out." Cleveland stated that he would work on writing a citation for the fictitious plates and no valid registration.

Pursuant to that plan, Freyermuth approached the passenger side of the car and ordered Shoemake out of the vehicle. At that point, he intended to arrest her because of the outstanding warrant. Shoemake complied and exited the vehicle, leaving her purse on the passenger's front seat. During this period of time, Cleveland remained outside the driver's door, engaging Jones in conversation. He asked Jones if he wanted Shoemake's bags to go with her to jail. Jones responded that he would take them to Shoemake's boyfriend's house, which was nearby.

Once Freyermuth had removed Shoemake from the vehicle, he asked her if she had any illicit substances on her. She responded that she had a small amount of marijuana in her pocket. Prior to this admission neither officer had seen any drugs, drug paraphernalia, or other contraband, nor had they smelled any drugs, during their investigation. Once Shoemake admitted to having marijuana on her person, Freyermuth relayed "PC" to Cleveland, which stands for probable cause.

Hearing the term "PC," Cleveland directed Jones to step out of the vehicle in order to frisk him. Jones notified Cleveland that he had a pocket knife in his front, left pocket and asked if he should remove it. The officers told him no. They proceeded to frisk Jones, finding an eyeglass case with syringes and methamphetamine in his jacket pocket. Jones was handcuffed and escorted to the backseat of the cruiser. The officers proceeded to search Jones' vehicle, although Jones had not provided consent for them to do so. In the center console, they located a firearm and under the driver's seat, they discovered a collapsible baton.

Jones was ultimately charged with possession of a deadly weapon by a prohibited person and possession of a controlled substance. Shortly thereafter, Jones filed a motion to suppress evidence and statements, claiming a violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.

A suppression hearing was held during which Cleveland and Freyermuth testified and footage from both officers' body cameras and a copy of the arrest affidavit was received into

evidence. In a written order, the district court granted the motion to suppress. After recounting the evidence presented, the court made several findings of fact.

As relevant to this appeal, the district court found that after stopping the vehicle, the officers looked through the windows with their flashlight and did not see any contraband. After obtaining information on the vehicle and its occupants, the officers discussed that they would place Shoemake into custody and issue a written citation to Jones as it pertained to the basis for the initial traffic stop. The investigation into the basis for the traffic stop had concluded at the time Cleveland asked Jones if he wanted Shoemake's bags to go with her to jail. Prior to Shoemake revealing she had marijuana on her person, the officers had not observed the marijuana, the smell of raw or burnt marijuana, drug paraphernalia, or any other indicator of the presence of drugs or drug activity on the occupants or in the vehicle. Jones and Shoemake did not know one another beyond Shoemake being a friend's girlfriend and that Jones was giving her a ride. Cleveland acknowledged that Jones appeared forthcoming and genuine.

Following its findings of fact, the district court determined that none of the warrantless search exceptions applied. The court specifically rejected the State's contention that Jones was removed from the vehicle for officer safety based upon the body camera footage and the officers' actions. It further determined that when the officers approached the vehicle the second time, the investigation as it pertained to Jones and his vehicle was complete; therefore, to extend the scope of the stop beyond this point to remove Jones from the vehicle and search him and his vehicle was impermissible pursuant to *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015).

Moving to the critical issue before the court, it stated "The narrow issue in the present case is whether the finding of marijuana on the passenger's person provides probable cause to search [] Jones and his vehicle, without more evidence of a nexus between the passenger, her criminal activity and [] Jones." Relying upon *U.S. v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L .Ed. 210 (1948), the district court concluded that the State failed to establish a nexus between Jones and Shoemake and her illegal activity to justify a search of him and his vehicle. Consequently, it granted the motion to suppress any evidence obtained from the search of Jones or his vehicle. The State appealed.

ASSIGNMENT OF ERROR

The State assigns that the district court erred in granting Jones' motion to suppress.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022).

ANALYSIS

The parties do not dispute that the officers had probable cause to initiate the traffic stop and I agree. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). The pivotal question is whether the officers violated Jones' constitutional rights by removing him from the vehicle to frisk him and search his vehicle. Under the facts of this case, I determine that they did.

Citing *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997), the State first argues that law enforcement officers may order passengers to step out of a vehicle pending completion of the stop. While that general proposition is correct, the U.S. Supreme Court explained that the public interest reason for such a practice lies in officer safety. *Wilson* was an extension of *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977), wherein the Court held that law enforcement officers may order drivers out of a vehicle during a traffic stop. However, in doing so, the *Mimms* Court focused on officer safety, both in terms of approaching a driver in a vehicle and subjecting oneself to the hazards of passing traffic.

Here, the district court rejected the State's assertion that Jones was removed from the vehicle for officer safety based upon the facts presented and I find no clear error in that determination. The officers twice approached the vehicle, seemingly without any concern for safety, and the footage from the body cameras reveals nothing that would cause a safety concern. Furthermore, the officers did not intend to remove Jones from the vehicle until marijuana was discovered on Shoemake, an insufficient basis upon which to do so as explained below. Given that the stop occurred at 4:09 a.m. on a sub-zero temperature morning with little to no other traffic, the potential hazard from passing traffic was minimal. Given the circumstances, Jones' removal from his vehicle was not based upon the officers' safety concerns.

The State next argues that the traffic stop had not ended before Shoemake was removed from the vehicle and that the stop had been properly extended. The district court determined that as to the reason for the stop, the investigation into Jones and his vehicle had ended. I agree.

The State contends:

Flowing from the active arrest warrant for the passenger, officers had concerns that criminal activity can be shared across occupants of a car as in a common enterprise which facilitated more questions to be asked to ascertain whether the occupants are in a common enterprise and therefore an extension of the stop above and beyond the traffic violation was warranted.

Brief for appellant at 26-27.

Absent some nexus between Jones and Shoemake, the presence of contraband on Shoemake does not subject Jones to a search. As stated by the U.S. Supreme Court "We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *U.S. v. Di Re*, 332 U.S. 581, 587, 68 S. Ct. 222, 92 L. Ed. 210 (1948). And as articulated by the Nebraska Supreme Court, in order to extend the scope of the stop, "an officer must have a reasonable, articulable suspicion that the motorist is involved in criminal activity unrelated to the traffic violation." *State v. Draganescu*, 276 Neb. 448, 461, 755 N.W.2d 57, 74 (2008). A police officer can inquire into matters unrelated to the

justification for the traffic stop if it does not measurably extend the duration of the stop. *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). Otherwise, it is unlawful to prolong a stop beyond the time reasonably required to complete the mission of the stop. *Id*.

Here, Jones and Shoemake did not know one another except as explained above. The State's argument that officers could extend the stop to facilitate more questions regarding Jones' and Shoemake's relationship does not comport with the officer's conduct. The officers could have asked Jones further questions about his relationship with Shoemake. Instead, the officers did not investigate further and escalated the stop to a search because Shoemake had drugs on her person. There was no evidence of drugs visible to the officers nor was there the smell of raw or burnt marijuana leading to suspicion that Jones would be aware of its presence. No reasonable articulable suspicion arises that Jones was involved in criminal activity unrelated to the traffic violation for which he was stopped.

The State further argues that because Shoemake was lawfully arrested, the officers were entitled to search the vehicle. It claims that the discovery of illicit drugs on a person gives probable cause to search the rest of the vehicle, citing *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018). But *Seckinger* involved the odor of marijuana coming from inside of the vehicle as the basis for probable cause to search it. The court iterated the long-standing rule in this state:

> When an officer with sufficient training and experience detects the odor of marijuana emanating from a vehicle that is readily mobile, the odor alone furnishes probable cause to suspect contraband will be found in the vehicle and the vehicle may be lawfully searched under the automobile exception to the warrant requirement.

*Id*. at 975, 920 N.W.2d at 851. Neither Cleveland nor Freyermuth smelled marijuana emanating from Jones' vehicle. *Seckinger*, therefore, does not provide a basis for the search of Jones' vehicle.

The State also asserts that Jones' admission that he had a pocketknife on his person allowed officers to extend the stop; however, he did not advise officers of this until after he was removed from the vehicle. Because officers had no reasonable suspicion or probable cause to extend the stop, his admission does not provide the basis for a search of Jones or his vehicle.

Finally, the State attempts to create a nexus between Shoemake, her illegal activity, and Jones through Shoemake's purse which she left on the front seat when asked to exit the vehicle. Due to the proximity of the purse to Jones and his willingness to deliver her bags to her boyfriend, the State argues that he had constructive possession of it and its contents (additional drugs and paraphernalia). But in order to possess a controlled substance, a person must be aware of its presence and exercise dominion or control over it. See *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). There is no evidence, direct or circumstantial, that indicates Jones had any knowledge of the content of Shoemake's purse or other bags. The purse, therefore, is not a basis upon which officers could search Jones.

Because the officers did not have a reasonable articulable suspicion to extend the stop or probable cause to search Jones, discovery of the eyeglass case and its contents does not provide a basis for a search of the vehicle. Nor does the presence of Shoemake's purse and bags provide a basis to search the vehicle once she had been removed from it. Granted, Shoemake's items would have been proper items to search, but that search does not extend to the vehicle. Law enforcement may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it

is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Here, Shoemake had been removed from the vehicle, handcuffed, and handed off to another officer; therefore, she had no access to the vehicle at the time of the search. Given the lack of familiarity between Jones and Shoemake, it was not reasonable to believe that Jones or his vehicle would contain additional drugs based upon Shoemake's possession of "an infraction amount" of marijuana.

## CONCLUSION

Under the facts of this case, the law enforcement officers' actions in removing Jones from the vehicle and subsequently searching him and his vehicle violated Jones' Fourth Amendment rights. Accordingly, the district court's order granting Jones' motion to suppress is affirmed.

AFFIRMED.