IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PARTEE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CARLO A. PARTEE, SR., APPELLANT.

Filed April 8, 2025.    No. A-24-706.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Christopher L. Eickholt, of Eickholt Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

MOORE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Carlo A. Partee, Sr., pled guilty to one count of driving during revocation, a subsequent offense. The Lancaster County District Court sentenced him to 5 to 8 years' imprisonment and revoked his driver's license for 15 years. Partee appeals, claiming that the district court imposed an excessive sentence. He also claims that his trial counsel was ineffective. We affirm.

## II. BACKGROUND

On April 10, 2024, the State filed an information charging Partee with one count of driving during revocation, subsequent offense, in violation of Neb. Rev. Stat. § 60-6,197.06 (Reissue 2021), a Class IIA felony.

On July 18, 2024, Partee pled guilty to the underlying offense of driving during revocation. The State provided the following factual basis for the plea:

- 1 -

[O]n February 16 of 2024, approximately 2:15 in the morning, officers with the Lincoln Police Department conducted a traffic stop on a vehicle after they observed it straddling and crossing over lane lines.

That vehicle, when they contacted it, was being driven by Mr. Partee. When asked for a driver's license, he was able to provide an ID card, and did not have a license at the time, did not have an ignition interlock device in the vehicle.

Mr. Partee's license was revoked for a felony DUR offense out of Douglas County. He was revoked until June 15 of 2038. That can be found at [case number].

Also, his license was revoked for a DUI, Fourth Offense, out of Douglas County at [case number]. Also, with ineligibility date of June 29 of 2038.

And all of those events occurred in Lancaster County, Nebraska.

When asked if he had any basic disagreement with the factual basis provided by the State, Partee personally responded, "No." The district court accepted Partee's plea and found him guilty of driving during revocation.

For the enhancement, the State offered into evidence a certified copy of a prior Douglas County District Court case in which Partee had been convicted of operating a motor vehicle during revocation; the exhibit was received into evidence without objection. After reviewing the exhibit, the district court found that it was a valid prior conviction for purposes of enhancement. The court found Partee guilty of driving during revocation, subsequent offense. The case was set for sentencing.

At the sentencing hearing on September 11, 2024, the district court sentenced Partee to 5 to 8 years' imprisonment, with credit for 2 days' time served. The court also revoked Partee's driver's license for 15 years, with the revocation to commence upon his release; the court said it would "permit interlock after two years of that revocation."

Partee appeals.

## III. ASSIGNMENTS OF ERROR

Partee assigns, reordered and restated, that (1) the district court erred in imposing an excessive sentence and (2) his trial counsel was ineffective because counsel did not (a) move to suppress the traffic stop and (b) negotiate a plea agreement.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Partee was convicted of one count of driving during revocation, subsequent offense, a Class IIA felony, punishable by up to 20 years' imprisonment, and a 15-year license revocation. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024); § 60-6,197.06. He was sentenced to 5 to 8 years' imprisonment and his driver's license was revoked for 15 years. Partee's sentence was within the statutory range. As such, we review the district court's sentencing determination only for an abuse of discretion. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022) (when sentences imposed within statutory limits are alleged to be excessive, appellate court must determine whether sentencing court abused its discretion in considering well-established factors and applicable legal principles).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Partee was 53 years old at the time of sentencing. According to the presentence investigation report (PSR), Partee was divorced, had two minor children, and six adult children. He had a GED and was employed. Partee reported having a prior problem with alcohol but did not consider it an issue at the time of the PSR; he reported an ongoing drug use problem. He completed inpatient treatment in December 2022 and was currently in outpatient treatment. He had been living in a transitional living house since July 30, 2024. Partee denied that he was under the influence of drugs or alcohol at the time of the current offense.

Partee has a lengthy criminal history dating back to the late 1980's. He has 6 convictions for driving under the influence, more than 40 convictions for driving or operating under suspension or revocation, and 2 convictions for "Operating During Revocation-DUI." Partee's criminal history also includes convictions for false information; shoplifting; carrying a concealed weapon; theft by receiving stolen property; robbery; attempted burglary; theft by unlawful taking; attempted theft by unlawful taking; destruction of property; possession of less than one ounce of marijuana; possession of marijuana, more than one ounce; felon in possession of a gun; negligent driving; disorderly conduct; assault and battery; harassment by phone; obstructing the administration of law; third degree assault; "Manufacturing, Delivering, Distributing or Possession with Intent to Deliver-Marijuana"; possession with intent to deliver a controlled substance; "Manufacturing, Disbursing, Delivering, Distributing or Possession with Intent to Distribute a Controlled Substance"; and "Possession with Intent to Distribute an Exceptionally Hazardous Schedule I, II, or III Controlled Substance." Partee has received numerous jail and prison sentences. He has also received several sentences of probation; some terms of probation were completed satisfactorily, some were completed unsatisfactorily, and he had a prior term of probation revoked. Partee was on probation when he committed the current offense of driving during revocation.

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation and Partee was assessed as a high risk to reoffend. He scored in the "[v]ery [h]igh" risk range in the criminogenic risk factor domains for criminal history, companions, and antisocial pattern. He scored in the "[h]igh" risk range in the domain for procriminal attitude. He scored in the "[m]edium" risk range in the domains for family/marital, leisure/recreation, and alcohol/drug problems. And he scored in the "[l]ow" risk range in the domain for education/employment.

At the sentencing hearing, Partee's counsel stated that Partee was having an issue moving his interlock device from one vehicle to another, was stopped, and did not have an interlock in the vehicle he was driving. "[Partee] says the DMV told him, you know, he was good to go, essentially. Paid reinstatement and whatnot. He believed he could operate the vehicle to get it moved and installed again, mistakenly. He understands that now." Counsel noted that Partee had "taken some significant steps to improve himself, . . . he's residing in a sober living facility" and "[h]e's in treatment." Counsel stated that Partee was asking the district court to consider those things, along with the fact that he had accepted responsibility and entered a plea without going to trial.

Partee personally addressed the district court stating, "When I talked to the DMV, they told me . . . everything's done here, you're in order," "I thought I was okay," but "I overstepped my bounds" and "I realize that." "Everything is in order now," "I have the blower in my car, everything has been that way for months, now," "I just jumped the gun."

The State argued that Partee's criminal history in the PSR "was 18 pages long, a lot of those driving offenses," "I know 46 Driving During Suspensions, six DUIs, three felony DURs." "So the concerning thing is Mr. Partee continues to drive while he's not supposed to be driving." The State noted that it did "check this morning," and "it does look like [Partee's] interlock permit is valid."

The district court stated that it had reviewed the PSR. It said, "I have never seen anybody, in my 18 and a half years as a judge, who has 43, 46 -- 40, we'll cap it at 40[,]" "I've never seen anybody who has 40 Driving Under Suspensions." "Over 40 Driving Under Suspension, that means that there was an order from a Court that said do not drive a motor vehicle, and in your history, at least 40 -- more than 40 times, you said, I don't care[,] I'm going to drive." "You have all of those DUIs," "I understand they're in the past, but they are still there," and "they show an absolute disregard for the law and the safety of others." "And then you have, of course, related to those DUIs the revocations of your driver's license, which, quite frankly, brings us here today," "[b]ecause here you are on yet another charge of Driving During a Revoked License." "And the whole thing about, I kind of almost got the interlock stuff right falls flat for me because there was not an interlock in the vehicle you were driving, and you knew it." The court noted that Partee was on probation when this offense occurred, and it had "no evidence" that Partee would follow orders if put on probation again; "quite frankly, it doesn't make any logical sense in the world for me to do that." The court found that the risk was certain that during any period of probation Partee would engage in additional criminal conduct. The court, "having regard for the nature and circumstances of this crime, the history, character, and condition of Mr. Partee," found that imprisonment was necessary for the protection of the public, and that "a lesser sentence than I will impose here today would absolutely depreciate the very serious nature of this offense and promote Mr. Partee's ongoing disrespect for the law." The court sentenced Partee as previously set forth.

On appeal, Partee argues that "[d]espite an array of mitigating circumstances, [he] was sentenced to a significant term of imprisonment," and he "was deprived of a just result when the sentencing court failed to meaningfully consider the circumstances surrounding the offense, the nature of the offense, the age, mentality and history of [Partee] and the circumstances relating to [Partee's] life." Brief for appellant at 12.

Based on our review of the record, we find that the district court did consider the relevant sentencing factors. To the extent that Partee's individual circumstances may weigh in favor of a more lenient sentence, our review of a sentencing order is limited to an abuse of discretion standard. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. See *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). We find the district court did not abuse its discretion in sentencing Partee.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Partee has different counsel on direct appeal than he did in district court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman, supra*. Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Lierman, supra*. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on

going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra.*

Partee claims that his trial counsel provided ineffective assistance when counsel did not move to suppress the traffic stop and did not negotiate a plea agreement. We address each claim in turn.

### (a) Motion to Suppress

Partee argues that he received ineffective assistance of trial counsel because counsel did not move to suppress the underlying traffic stop which resulted in the charge.

At the plea hearing, the following colloquy was had on the record.

THE COURT: If you have made any statements, admissions, or confessions to law enforcement or any other public official about this case, you are entitled to a separate hearing to have me determine whether such statement, admission, or confession was made by you freely, voluntarily, knowingly, and intelligently.

If, at that hearing, I found that any one or more of those items is missing, then that statement, admission, or confession could not be used against you at the time of a trial. Do you understand that?

[Partee]: Yes, I do.

THE COURT: If I accept your plea of guilty, you will be waiving and giving up your right to have this type of hearing. Do you understand that?

[Partee]: Yes, I do.

THE COURT: Law enforcement officers may have taken evidence from you. If they did, you have a right to a separate hearing to have me determine whether any evidence taken from you was lawfully taken from you.

If, at that hearing, I found that there was evidence not lawfully taken from you, then that evidence could not be used against you at the time of a trial. Do you understand that?

[Partee]: Yes, I do.

THE COURT: If I accept your plea of guilty, you'll be waiving and giving up your right to have this type of hearing as well. Do you understand that?

[Partee]: Yes, I do.

Partee confirmed that he was pleading guilty freely and voluntarily. When asked by the district court if he fully understood what the State would have to prove beyond a reasonable doubt in order to convict him of the charge, Partee responded, "Yes."

While Partee admits that the above information was provided to him by the district court at the plea hearing, he argues that neither his trial counsel nor the court informed him that he had the ability to challenge the legitimacy of the initial traffic stop by the police. He claims that had he known he could have contested the legality and legitimacy of the initial traffic stop, he would have done so. Additionally, Partee now, for the first time, "disputes this recitation of facts" from the plea hearing and "claims it is not accurate." Brief for appellant at 9. Partee contends that the record is insufficient to determine whether trial counsel was ineffective in not filing a motion to suppress the traffic stop because "the record is not clear as to what evidence [Partee] had to offer that would challenge the assertion of police explaining why they stopped [Partee] on the date in question." *Id.*

However, we find that the record is sufficient to address this claim of ineffective assistance of counsel and find that Partee cannot establish prejudice.

At the plea hearing, the district court informed Partee of the rights he would be waiving by entering a plea. Partee confirmed to the court that he had told his attorney everything he knew about the case, was satisfied with the job that his counsel had done, and that counsel had not refused or neglected to do anything Partee asked of him. The State set forth the factual basis for the plea, which included the fact that law enforcement conducted a traffic stop of the vehicle driven by Partee after they observed it straddling and crossing over lane lines. When asked if he had any basic disagreement with the factual basis provided by the State, Partee personally responded, "No." Because law enforcement observed the vehicle straddling and crossing over lane lines, they had probable cause to stop the driver of the vehicle and any challenge to the legitimacy of the initial traffic stop would have failed. See *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018) (traffic violation, no matter how minor, creates probable cause to stop driver of vehicle). Because Partee cannot show prejudice, his ineffective assistance of counsel claim fails.

### (b) Plea Agreement

Partee argues that he received ineffective assistance of trial counsel because counsel did not negotiate or arrange a plea agreement in this case.

At the plea hearing, Partee confirmed that he told his attorney everything he knew about the case, and he was satisfied with the job his attorney had done. When asked if his attorney had refused or neglected to do anything that he asked of him, Partee responded, "No." The following colloquy was then had on the record.

THE COURT: . . . [State], the plea agreement?

[The State]: There's no plea agreement Your Honor.

THE COURT: Okay.

[Defense Counsel], is that your understanding as well that there is no plea agreement in this case?

[Defense Counsel]: I tried. There is no plea agreement, that's right.

THE COURT: All right.

Although . . . Mr. Partee wanted a plea agreement, it looks like there's no plea agreement.

Is that your understanding as well, Mr. Partee?

[Partee]: Yes, it is. It is what it is. I can't do anything. I mean, I could have waited out even more, drug out more of the Court's time. I'm not going to do all that. I'm just going to --

THE COURT: All right.

In exchange for your plea of guilty to the charge in the Information, have any promises been made to you of any kind at all?

[Partee]: No.

. . . .

THE COURT: Are you pleading guilty freely and voluntarily?

[Partee]: Yes.

Partee then proceeded to plead guilty to the crime as charged in the information.

Once again, Partee contends that the record in insufficient to determine whether trial counsel was ineffective in failing to negotiate a plea, "as the details as to what possible agreement could be negotiated is not in the record before this Court." Brief for appellant at 10. However, the State contends that "the record affirmatively refutes [Partee's] claim and Partee cannot establish prejudice." Brief for appellee at 16. We agree with the State.

The colloquy at the plea hearing established that Partee's trial counsel tried to obtain a plea agreement, but that there was no such agreement. Partee personally confirmed his understanding that there was no agreement. And, as noted by the State, "there is no evidence to suggest that had defense counsel tried more than he stated he did, the State would have offered or accepted a plea agreement of reduced charges." *Id.* Additionally, at the plea hearing, Partee stated, "I could have waited out even more, drug out more of the Court's time. I'm not going to do all that." Because Partee cannot show that his trial counsel was deficient, or that he was prejudiced, his ineffective assistance of counsel claim fails.

## VI. CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion in sentencing Partee. We further find that Partee's ineffective assistance of trial counsel claims fail. We therefore affirm his conviction and sentence.

AFFIRMED.